<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH SHENEKJI,

              Plaintiffs,           Civ. No. 12-620 (DRD)

v.                                            **O P I N I O N**

TOWNSHIP OF WAYNE,

              Defendants.

*Appearances by:*

ARLEO, DONOGUE & BIANCAMANO, LLC
By: Frank P. Arleo, Esq.
622 Eagle Rock Avenue
West Orange, New Jersey 07052

    *Attorney for Plaintiff*

WILENTZ, GOLDMAN & SPITZER P.A.
By: Dominick Bratti, Esq.
    Rebecka J. Whitmarsh, Esq.
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095

    *Attorneys for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

       This matter arises out of Defendant Township of Wayne's refusal to provide Plaintiff Joseph Shenekji with sick leave pay pending the outcome of his application for permanent disability. On February 2, 2012, Plaintiff filed a Complaint against Defendant alleging violations

of the Equal Protection Clause and Substantive and Due Process Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"); a violation of Equal Protection and Due Process rights under the New Jersey Constitution; and a single claim for breach of contract. Defendant now moves for Summary Judgment in its favor on Plaintiff's claims. Plaintiff moves for Summary Judgment in his favor on his claims. For the reasons set forth below, Defendant's Motion is GRANTED and Plaintiff's motion is DENIED.

## I. BACKGROUND

Plaintiff was employed by Defendant as a police officer beginning in 1993. In November 2001, Plaintiff was promoted to Police Sergeant. Plaintiff's employment with Defendant was governed by a Collective Negotiations Agreement ("CNA") between Defendant and the New Jersey State Policeman's Benevolent Association, Local No. 136 ("the PBA"). The CNA sets forth a four-step grievance procedure that ends in binding arbitration before the Public Employment Relations Commission ("PERC").

In May 2008, while on duty, Plaintiff was in a motor vehicle accident and suffered injuries to his cervical spinal column. As a result, Plaintiff was not longer able to perform his duties and, in November 2008, filed an application for permanent disability with an effective retirement date of February 1, 2009. In the interim, he was assigned to light work. Plaintiff's disability application requested that he be permitted to use his accumulated sick days while the application was pending before the New Jersey State Pension Board. Defendant refused this request.

On November 19, 2008, the Chief of Police circulated a memorandum announcing Plaintiff's retirement from the force due to disability. The memorandum stated that Plaintiff

"will begin taking his vacation time, holidays, compensatory time and terminal leave effective November 19, 2008." (Whitmarsh Decl., Ex. B at D-8.)

On November 28, 2008, the PBA issued a letter to Defendant objecting to the memorandum. The letter states that "only the NJ State Pension Board for Police and Fire Fighters can make the determination as to [Plaintiff's] level of disability," and that Defendant's determination that Plaintiff was unable to work was in violation of his civil rights, federal law, and Wayne Township Law.[1] (Whitmarsh Decl., Ex. B at D-3.) The letter further states that Plaintiff was willing to return to temporary modified duty pending his pension hearing would in fact "be returning to work on modified duty on December 3, 2008 until his pension hearing date." (Id.) Finally, the letter states: "Please consider this letter Step 3 of the grievance procedure . . . ." (Id.)

On December 2, 2008, Defendant sent a letter to the PBA requesting a meeting with Plaintiff "to determine the limitations imposed by [Plaintiff's] physical condition and whether any reasonable accommodations can be made to enable [Plaintiff] to perform the functions of his job." (Whitmarsh Decl., Ex. B at D-4.) Shortly thereafter, Plaintiff, PBA officials, and Defendant held a meeting to discuss the issue of Plaintiff's sick leave. At that meeting, Plaintiff argued that he was entitled to paid sick leave for his injury under Article VII of the CNA. Article VII, entitled ABSENCE DUE TO ILLNESS, states that Defendant "may require an Employee who has been absent in excess of three (3) consecutive days by reason of illness or injury as a condition of return to duty to be examined at [Defendant's] expense by a physician designated by [Defendant]." (Whitmarsh Decl., Ex. D.) Defendants' representatives disagreed,

---

[1] The letter postulates that Defendant unilaterally terminated Plaintiff's employment "to get him off the books as soon as possible . . . ." (Whitmarsh Decl., Ex. B at D-3) (quotation marks omitted).

3

contending that Article VII provided sick leave only for temporary illness or injury, whereas Plaintiff had applied for permanent disability.  Consequently, Defendant told Plaintiff that he would neither be returned to modified duty, nor allowed to use sick time pending his disability pension hearing.

On March 11, 2009, the PBA sent a letter to Defendant stating that Plaintiff had completely exhausted his employment and was no longer receiving pay.  Therefore, according to the letter, Plaintiff no longer had sufficient income to sustain him pending his disability hearing date, which he had yet to receive.  The letter further alleged that, in the past, Defendant had altered retirement dates for every other police officer employee that had filed for a disability pension.  The letter reiterated the PBA's and Plaintiff's position that he (1) "should not have been relieved from duty in the first place"; and (2) "should be able to use his sick time to bring him to his disability hearing date." (Whitmarsh Decl., Ex B. at D-5.)  Finally, the letter stated that if Defendant disagreed with this position, to "please consider this letter as a notice to proceed to Step 4 of the grievance procedure." (Id.)

In response, Defendant proposed a settlement under which Plaintiff would remain an employee from March 1, 2009 through April 30, 2009.  During that time, Plaintiff would be placed on paid sick leave and receive health insurance.  Plaintiff rejected this offer because he remained unsure exactly when the state pension board would hear and reach a decision on his disability application.

In June 2009, Plaintiff's disability application was approved with a retroactive date of February 1, 2009.  However, the issue of whether Plaintiff was entitled to a final payment from Defendant for his sick leave remained unresolved.  Consequently, on August 17, 2009, Plaintiff and the PBA retained counsel and filed a request for arbitration.  On August 31, 2009,

Defendant, through counsel, sent a letter to Plaintiff's counsel stating that "[b]ecause [Plaintiff] has been approved for an accidental disability retirement effective February 1, 2009, your grievance seeking any type of remuneration from [Defendant] after February 1, 2009 is meritless and could jeopardize your client's ability to continue receiving his accidental disability retirement. As a result we respectfully request that you withdraw the arbitration filed on behalf of [Plaintiff]." (Arleo Decl., Ex. G.)  Plaintiff subsequently withdrew his request for arbitration.

On July 12, 2010, Defendant issued to Plaintiff a final statement of his earnings and deductions. The statement indicated that Plaintiff was paid through February 1, 2009—the day his permanent disability took effect. However, Defendant deducted pay for a number of terminal leave days to offset the sick leave pay to which Plaintiff believed he was entitled. Apparently, Defendant had not made such deductions on the final pay of other officers that had gone out on permanent disability.

## II. DISCUSSION

Defendant now moves for Summary Judgment in its favor on all of Plaintiff's claims. In doing so, it argues that Plaintiff's Section 1983 claim (1) is barred by the applicable two-year statute of limitations; and (2) fails because Plaintiff fails to set forth a constitutional violation. Defendant argues that Plaintiff's claim for breach of contract should be dismissed because Plaintiff failed to exhaust the CNA's administrative process.

Plaintiff opposes the motion, arguing that (1) his injury accrued within the two-year limitations period; (2) he has set forth an equal protection violation; and (3) exhaustion of the administrative process would have been futile. Plaintiff also moves for summary judgment in its favor on all of its claims, arguing that there is no material dispute of fact that (1) Plaintiff was entitled to sick pay under the CNA; (2) he was treated differently than every other similarly

situated police officer employed by Defendant; and (3) this disparity in treatment was the result of both Plaintiff's disability and Defendant's desire to "clear the books of [a] highly compensated officer." (Pl.'s Br. 20-21.)

**A.      Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the

evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B.     Plaintiff's Section 1983 Claim**

Plaintiff's Section 1983 claim is barred by the applicable two-year statute of limitations. "The statute of limitations for any Section 1983 claim is the state statute which limits actions for personal injuries." Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (citation omitted). "In New Jersey that statute is N.J.S.A. 2A: 14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Id. (quotation omitted). "A [S]ection 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1988) (citation omitted).

Plaintiff's Section 1983 claim is premised on an equal protection violation under the Fourteenth Amendment of disparate treatment.[2] According to Plaintiff, Defendant allowed other police officers in its employ to use sick leave pending disposition of their disability applications, but did not allow Plaintiff to do so.

Plaintiff argues that his injury only accrued on July 12, 2010, when Defendant issued Plaintiff his final statement of earnings indicating that he was not being paid for sick leave. The record makes clear, however, that Plaintiff had knowledge that Defendant refused to allow him

---

[2] Plaintiff's Complaint also contains claims under the United States Constitution and New Jersey Constitution for violations of Plaintiff's procedural and substantive due process rights. However, the Complaint fails to indicate which facts support those claims. Moreover, Plaintiff fails to cite to any evidence in the record to support them. Indeed, in his opposition brief, he makes no mention of any due process violations. Therefore, Plaintiff's claims for violations of his procedural and substantive due process rights are dismissed.

to use his sick leave pending a decision on his application for permanent disability as early as the December 2008 meeting where he was told that he would not be able to do so. At the latest, Plaintiff had such knowledge by March 11, 2009, when the PBA sent a letter on his behalf stating that Plaintiff (1) had completely exhausted his remaining leave and was no longer receiving pay from Defendant; and (2) "should be able to use his sick time to bring him to his disability hearing date." (Whitmarsh Decl., Ex B. at D-5.) The letter further stated that Plaintiff wished to proceed to step four of the CNA's grievance procedure for this issue.

Thus, at the latest, Plaintiff's injury accrued on March 11, 2009.[3] However, Plaintiff filed his Complaint on February 2, 2012, well after the two-year statute of limitations expired. Consequently, Plaintiff's Section 1983 claim is barred by the statute of limitations.

Plaintiff hints at equitable tolling by pointing to "endless negotiations between the parties regarding the appropriate use of sick leave benefits . . . ." (Pl.'s Br. 12.) Under New Jersey law[4], "equitable estoppel may be appropriate where a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation." W.V. Pangborne & Co., Inc. v. New Jersey Dep't of Transp., 116 N.J. 543, 553-54 (1989) (quotation omitted). "However, mere negotiations, without more, are insufficient to invoke equitable tolling." Jacobson v. Celgene Corp., Civil Case No. 09–4329, 2010 WL 1492869, at *5 (D.N.J. Apr. 14, 2010).

---

[3] Plaintiff further argues that he "did not become aware that other officers were afforded sick leave benefits under the circumstances identical to plaintiffs [sic] until after plaintiff received his final statement." (Pl.'s Br. 13) (emphasis in original)  Be that as it may, the accrual inquiry centers on when Plaintiff knew *or should have known* of his cause of action. Plaintiff presents no reason why, through reasonable diligence, he could not have discovered that other police officers had been afforded sick leave under similar circumstances.

[4] While accrual of an injury that starts the statute of limitations of a Section 1983 claim is a matter of federal law, equitable tolling of the statute of limitations is a matter of state law. See Board of Regents of University of State of New York v. Tomanio, 446 U.S. 478, 483-84 (1980).

Here, the parties met and debated whether Plaintiff was entitled to use his sick leave pending a decision on his disability application, and Defendant subsequently made a settlement offer that Plaintiff rejected. However, there is no evidence that Defendant in any way created the impression that the claim would be amicably settled. Moreover, the record is clear that all negotiations and settlement discussions ended well before the statute of limitations period expired. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's Section 1983 claim is granted.[5]

**C.     Plaintiff's Claim for Breach of Contract**

Plaintiff claims that Defendant breached the terms of the CNA by failing to allow Plaintiff to use sick leave for his injury. Defendant argues that Plaintiff failed to exhaust the administrative remedies under the CNA, which bars that claim.

It is undisputed that, under the CNA, Plaintiff was required to complete all four steps of the grievance process. It is also undisputed that, in withdrawing from arbitration before PERC, Plaintiff failed to complete step four of the grievance process. Plaintiff argues, however, that he should be excused from the exhaustion requirement because Defendant bullied him into withdrawing his request for arbitration.

---

[5] Plaintiff's equal protection claim under the New Jersey Constitution is also barred by the same two-year statute of limitations. See Brown v. City of Newark, Civil Action No. 09–3752, 2010 WL 1704748, at *4 (D.N.J. Apr. 26, 2010). Moreover, even if Plaintiff had asserted his equal protection claims within the two-year statute of limitations period, they would still fail as a matter of law. Plaintiff does not contend that he was a member of a protected class against which Defendant discriminated. Rather, he claims that he was "irrationally singled out as a so-called 'class of one.'" Engquist v. Oregone Dep't of Agr., 553 U.S. 591, 601 (2008). The Supreme Court has held that "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context." Id. at 605. Indeed, "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly constitutionalize the employee grievance." Id. at 609.

Whether Plaintiff failed to complete the grievance procedure under the CNA is more properly characterized as an issue of mandatory arbitration, rather than exhaustion. Exhaustion implies that, had Plaintiff completed arbitration under the CNA, he would have then been able to assert his claims in this Court. Mandatory arbitration, on the other hand, is final and binding, and parties cannot re-litigate in the courts those claims that were submitted to arbitration.

Here, step four of the CNA's grievance process mandates arbitration, pursuant to PERC rules, "for any Township action which may constitute a violation of [the CNA]."[6] Thus, Plaintiff's claim against Defendant that it breached the terms of the CNA by refusing to allow him to use sick leave clearly falls within the scope of the arbitration clause. The CAN therefore bars Plaintiff's claim for breach of contract in this Court.

Defendant further argues that Plaintiff may not submit its claim for breach of the CNA to arbitration at this juncture because the time period in which to do so has expired. The statute of limitations to submit a matter to arbitration before PERC is six months. See N.J.S.A. 34:13A-5.4(c). While there is no dispute that a request for arbitration at this time would fall far outside the six month period, Plaintiff may submit its claim to arbitration because Defendant prevented him from pursuing it in the first place. See id. ("[N]o complaint shall issue based upon any unfair practice occurring more than 6 months prior to the filing of the charge unless the person aggrieved thereby was prevented from filing such charge in which event the 6-month period shall be computed from the day he was no longer so prevented.").

---

[6] To be sure, the arbitration clause, which states that "[in] the event the grievance has not been resolved at step three, then within ten (10) calendar days, the matter may be referred to arbitration by the parties for resolution and disposition" (Whitmarsh Decl., Ex. D), is poorly drafted and appears almost permissive. Nonetheless, the CNA clearly states that the four-step grievance procedure "constitutes the sole and exclusive method for resolving grievances between the parties covered by this Agreement, and shall be followed in its entirety." This language is sufficient to infer the parties' intent to require mandatory arbitration for Defendant's violations of the CNA.

Indeed, Defendant's August 31, 2009 letter in response to Plaintiff's request for arbitration stating that (1) Plaintiff's grievance was "meritless and could jeopardize [his] ability to continue receiving his accidental disability retirement;" and (2) asking Plaintiff to withdraw his request for arbitration (Arleo Decl., Ex. G), and Plaintiff's subsequent withdrawal of his request for arbitration, makes clear that Defendant successfully prevented him from pursuing arbitration. Plaintiff may therefore pursue arbitration at this time. Consequently, Defendant's Motion for Summary Judgment on Plaintiff's claim for breach of contract is GRANTED and Plaintiff's Motion for Summary Judgment on that same claim is DENIED. Plaintiff may submit the claim to arbitration pursuant to the CNA.

### III.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff's claims are dismissed without prejudice. However, Plaintiff may submit his claim for breach of contract to arbitration pursuant to the CNA.

The Court will enter an Order implementing this Opinion.


　　　　　　　　　　　　　　　　　　　　 **/s/ Dickinson R. Debevoise**
　　　　　　　　　　　　　　　　　　　　DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  March 19, 2013